Number 177037 Rife v. Jefferson. Thank you, Your Honor. I'm Devin Peterson. I'll be arguing this morning on behalf of State Trooper Joe Jefferson. I'll be splitting my time with Counsel Stephen Garys, who represents the County Jail Trust employees. May it please the court. In the course of carrying out their duties, law enforcement officers often encounter motorists who've been involved in accidents. Many times when the officer arrives, the motorist will deny injury or report injury that they don't think requires immediate medical attention. For example, they may say, I'm not hurt, I don't need anyone called for me, but my neck hurts or my back hurts. And this raises the question, under what circumstances are law enforcement officers constitutionally required to seek medical care? So you represent Jefferson? Yes, that's correct, Your Honor. And your colleague represents Dale and Willis? Yes, sir. The facts are not the same as between the three of you. They're different time periods, that's correct. Your client is privy to some facts that your colleague's clients are not. There are different circumstances, different sets of knowledge known by each of the groups of dependents. This raises the question, under what circumstances are officers required to seek medical attention for motorists in such a situation? Well, when you use the word officers, you're talking about Officer Jefferson. Yes, law enforcement officers. As we just said in the previous question, you may be responsible to do something and they may not. And on the other hand, as custodians, they may be required to do something and your client may not. So I think it's really important to segment our facts as we proceed. Yes, I'll try to use the term law enforcement officer as opposed to jailer or something like that. So in the Tenth Circuit, at the time of the facts of this case, there were no cases at all dealing with this issue, even in a broad sense. And certainly there were no cases whose facts squarely governed the unique facts that we have in our case, as required in order for the law to be clearly established. As this Court has recognized in Aldaba and a number of other cases that we've cited. Now, an officer arriving at the scene is not in a good Samaritan-type situation, where you have no responsibility other than what common law may impose. In your case, at the point where the officer arrives, basically he's the only hope, if somebody's injured, that they can be released. But there will be a call for help. I'm not sure that's a key issue in this case, but that's not quite correct. Were there other standby citizens who came to the accident scene who could have called? It was a busy highway, there was a call. That is not asserted as an issue in the case, that others could have called and provided relief for the appellee. Well, I think the point you're getting to is, at what point does the 14th Amendment kick in at all? And certainly on a negligence standard, it kicks in immediately, and so the officer, because he's an officer, when he's there, he's got a duty. Under state tort law, for example, but under the Constitution, the law doesn't kick in until he removes the plaintiff's ability to seek medical attention on his own. So if he is affirmatively denying the plaintiff's ability to seek medical attention, then he's in a situation like, in some of the cases, plaintiff sites, where you have professional medical gain. Keepers, whose job it is to either keep the gate closed or open the gate, that's not really the situation Jefferson's in here. And here, my main point is that the law is not closely particularized enough to the facts of our case. What about Howard v. Dickerson? Howard v. Dickerson, a 2005 Tenth Circuit case? I'm not sure if it's 2005, that might have been Manna, but that's a case where the arresting officer, if I'm thinking correctly, I think it's where the arresting officer handcuffs the individual and they complain that they've had recent neck surgery, and they want to be handcuffed in front rather than back. Are you familiar with that case? I don't recall that that was in the briefs, Your Honor. I don't know that you briefed it, but you're saying there's no law, and I think there may be some fairly close case law, and I'm wondering about that one in particular. I'm sorry, I don't think that was asserted by the plaintiff. It's one of the cases they relied on. Does it have to be asserted by the plaintiff? Can't we consider cases that we're aware of that might have clearly established law? On the clearly established question, the court is required to bring to bear its full knowledge of the case. Martinez v. Beggs, on the other hand, was well established, right? Martinez, I believe that's a district court opinion, isn't it, Your Honor? I have it as fed third, 1082. Again, I don't recall that the plaintiff has relied on that case. It's not ringing a bell for me. Martinez v. Beggs. I'm sorry, Your Honor. What about Olson v. Leighton Hills? That's a Tenth Circuit case. Olson v. Leighton Hills, that's a Tenth Circuit case. That can be understood for the proposition, and this is the plaintiff's main case. That can be understood for the proposition that when a law enforcement officer, in an obviously egregious manner, attacks an innocent plaintiff, slings him across the room, slams him into a wall, and thereby precipitates a psychiatric episode. And where the plaintiff reports that psychiatric episode to the officer, and pleads with him for assistance with that psychiatric episode. In such a case, the officer will be liable for a constitutional violation. Well, I don't know that the facts are quite that specific as far as the officer causing the psychiatric episode. This person had OCD, and they were suffering a panic attack, and they tried to tell the officer that. He ignores the pleas. But the fact is, the officer, as we have here, is, we've already found that there was deliberate indifference here to his medical needs. And essentially, that's exactly what the court found there, is the officer knew that he, you know, he said, and he was clearly having a panic attack, and he wanted help, and the officer ignored that. It was deliberate indifference. In this case, there was no, the court in that case said that the plaintiff was, I think it was pleading for assistance. And here, Mr. Reif never made any request to Trooper Jefferson for medical assistance. But he had a concussion, didn't he? I mean, so you're going to say that somebody who is exhibiting symptoms of a head injury has to plead their case, essentially, and say, I think I have a head injury, that's why I'm so dizzy, that's why. I mean, does a case law really have to be that specific? That the plaintiff has to plead their case when we've already found that there was deliberate indifference? We can certainly argue about what the trooper should have done, and whether he was negligent or not, but the degree of specificity that we do need, it is critical that we look at each material fact. Well, under Farmer v. Brenman, I don't think the court said that a fact finder may conclude that the prison official knew of substantial risk from the very fact that the risk was obvious. Here, wasn't there some obviousness that the motorcycle had crashed? It was apparent that there was an accident, but you do raise an excellent point that I do need to address, and that Farmer v. Brenman standard, where we're looking at circumstantial evidence to look at the state of mind of the defendant, and that can create an issue. That's strictly on the Prong-1 deliberate indifference test. That's strictly something that the first panel has dealt with. What we're on here today is a completely different test. Here we're on the second prong, which is objective legal reasonableness, and the only thing we look at is whether every reasonable official would have concluded, based on the objective facts, which are all captured here on a video, whether every reasonable official looking at this video would determine that there was deliberate indifference. What Trooper Jefferson did was a constitutional law violation, and in Harlow v. Fitzgerald, I need to point out that when they're telling us how to do this objective legal reasonableness test, Harlow was an employment retaliation case. They said, there can be issues of fact about the subjective state of mind of the defendant, but we do not look at that to prevent summary judgment on the second prong. The only thing we look at is not whether there are fact questions about the state of mind. We look at the objective facts, as in the video. When your client delivered Mr. Reif to Dale and Willis, what did he tell them? Did he tell them that the chap had been in an accident? No, he didn't. He didn't report that. He did not believe that Mr. Reif was injured. In all of the cases that the plaintiff relies on, and I'll just wrap up, in all of the cases that the plaintiff relies on, the defendants have made critical admissions. Okay, let's hear from you, Your Honor. Unfortunately, time constraints always are present. We read the record carefully. Thank you, Your Honor. My name is Steve Gary, I represent the two jailers, Willis and Dale. Again, the question here is whether the right was clearly established at the time of this incident. We believe that it wasn't clearly established. In this case, Dale and Willis had no information about an accident. They encountered a man who had been arrested for public intoxication, and they believed him to be intoxicated. In fact, they went through the medical questionnaire and the evaluation that they go through with all inmates. What are the facts of the actual physical transfer? According to the testimony, Your Honor, the trooper told them the charge and the location of the arrest, and then they processed the inmate into the jail, including changing him out into jail clothes. The cases that were cited by plaintiff's counsel in his brief, and even by the district court, do not create clearly established law that would be relevant in this case. The three cases that the district court found, the first one was the Garcia v. Salt Lake case. That was an official capacity claim. Specifically, with regard to that official capacity claim against the entity, the court found that the county had a policy in place to make it official. The county had a policy of admitting to jail unconscious persons suspected of being intoxicated, coupled with evidence of gross deficiencies and deliberate indifference in staffing and procedure to monitor such persons. Totally different situation. The gentleman was moaning and groaning in obvious pain, correct? Well, the testimony is that that didn't occur until he was placed in the cell. Mr. May. We've already found the constitutional violation, the facts have been determined, and we can't question those now. And if you are questioning them, we don't have jurisdiction. The review, I believe, is de novo, your honor, respectfully. Yes, on the legal issue, but I'm saying, if you're still challenging facts, which it kind of sounds like you are. We do challenge the scope of the court's review of that fact. But even if that fact, found in the light most favorable to the plaintiff, Mr. Wright, against our clients, the complaint that he had, the pain that he had that he told Mr. May in the jail cell was abdominal pain, stomach pain. There's no precedent in the Tenth Circuit or Supreme Court that says stomach pain is a serious medical issue that requires emergent care. Nothing. We were unable to find anything, and certainly plaintiff's counsel hasn't cited anything of that nature. Well, I guess the problem I'm struggling with is that there's already been a finding that these two individuals, your clients, were deliberately indifferent to his medical needs. And so now you're asking us to make a distinction or to suggest that the law would make a distinction between stomach pain and chest pain with respect to deliberate indifference. And the law is not clearly established that if you're complaining of chest pain, they can take no action. But you see what I'm saying? I'm not sure how particularized we can get here. I think that there's not been a finding that there was deliberate indifference. The finding was that there was an issue of fact regarding whether or not Willis and Dell acted deliberately indifferent. There's not been a finding that they acted deliberately indifferent, but that there was a question of fact. Which is different, which would be a jury question. Now the question is, was it... Well, there's a finding that the facts as found by the district court established deliberate indifference. The first prong, the subjective prong. Right, right, and that's what I'm saying. Now you're asking us to make a distinction on the clearly established prong based on the fact that there's never been a case. While there's been cases where there's been chest pain that was ignored, there's not been cases where stomach pain was ignored. Well, certainly, because chest pain is completely different. Chest pain is indicative of a cardiac condition, which is dire, which is completely different. A cardiac event could lead to immediate death. A stomach pain, there could be a plethora of instances. And when these jailers specifically encountered Mr. Reif, they believed him to be intoxicated, which it's common to have people who have stomach pain. And so it was completely in the realm of those facts. If you could wind up, please. Your Honor, we believe that the level of generality that the court found, that the right was clearly established in the district court was in error, and that there's no specific case that finds otherwise. Thank you. Good morning. Late morning. My name is Bob Blakemore. I represent the plaintiff appellee in this second appeal in this case. And as noted, what we're addressing in this appeal versus the first appeal is the second prong of the qualified immunity test. It's already been decided by a previous panel that there were sufficient facts to support the claim that Mr. Reif was intoxicated. And there were sufficient facts in the summary judgment record that a reasonable jury could find deliberate indifference on the part of these defendants, Trooper Jefferson and officers Dalen Willis. So part of what I heard, going to Trooper Jefferson first, part of what I heard Mr. Peterson arguing is that, you know, we could say that maybe Trooper Jefferson was not intoxicated. And that maybe he was negligent. Well, again, the issue of the first prong on deliberate indifference is not before the court. The issue is really what's become sort of a hot button issue over the last couple of years with civil rights lawyers is, and it's always been a question, but it's become more focused over the last couple of years. And that is, what level of specificity do you have to have from a prior precedent for a right to be clearly established? And I would, I would say that even after White versus Pauly, before that there was the Mullenix versus Luna case, and then now the Aldaba case, that it's still not, you know, abundantly clear. You have statements ranging from the prior case does not have to have identical facts, to we know that we can't have a high level of generality, but then in White versus Pauly, there's still the statement that general, and this is a quote from page, 552 of White versus Pauly, general statements of law are not inherently incapable of giving fair and clear warning to the officer, if in light of the preexisting law, the unlawfulness was apparent. So somewhere in there, we will find a clearly established right. Now, our argument in this case, one, is that they, the defendants didn't sufficiently raise the issue that they're raising now on appeal below. It was, with respect to Willison and Dale, they really didn't address clearly established right. Well, once they, once they raise a qualified immunity defense, then it's your burden to establish that. Right, and that's... You have to establish the two prongs. That's true. I guess part of what I struggle with sometimes there is to what extent do they have to raise the argument even to trigger our burden. Well, we're here, and what cases specifically? And Garcia, that you seem to rely on primarily, clearly isn't helpful, since that was a municipality's liability. And the court was very clear that they were talking about the combined acts of numerous employees. So what other cases, besides Garcia, are you relying on for either, Jefferson? Well, part of what, part of what we're arguing is under, under White versus Pauly. That, and first with Jefferson. That, that the facts in this case, and, and they're not arguing that in general, that the facts in this case, and they're not arguing that in general, that a detainee's right to reasonable medical care is, is clearly established. They're arguing, that's really not an issue. The argument is, there's not a specific case out there. Again, White versus... Particularized, particularized. Particularized case, right. White versus Pauly, again, would say that, depending on the, the obviousness of the situation, that general statements of law can, provide sufficient notice that it's clearly established. And I would say with respect to Jefferson, that, that, that applies. And that, that's based on, that's based on the, the general statements of law, and then these, these ten evidentiary items that the court noted in the, the initial decision. Well, it seems to me that you're, in your argument, you're making a clear distinction as between Jefferson and Dalen and Willis. Yes, I think, I think that there is. I think... Do you concede that you have a much weaker case against the latter two? I would, I don't know, I would say much weaker, but I would say that, I would say that certainly the, the case against Jefferson is stronger. The fact that he knew, Jefferson knew that Mr. Reif... Given that Dalen and Willis didn't even know he'd been in an accident. Right. Dalen, what Dalen and Willis, they did not have the information that he was in an accident. They, they knew enough when he was booked in that he was not making any sense. He was not being verbal. He was, they put him in a, a monitoring cell, similar to the situation actually in Garcia, albeit the case of Jefferson. That was a official capacity case. And he wasn't checked on. And we have the, the affidavit from his cellmate that he was groaning, he was clearly in pain, clearly needed medical attention, is the, the testimony from a layman's point of view. And I would argue that, that, that type of pain, severe pain, is not the case. That he was in pain, coupled with his, his affect, that he was, he was out of it. He really, at one point, one of the officers says that he didn't really even seem like he knew where he was. You put those things together, and I think that the, the existing case law... What's your best case that that was clearly, that they, at that point, the law was so clearly established that they should have sought medical care at that point? Well, I... What's the case? Well, I've cited, you kind of already shot, shot it down, but I did cite to, to Garcia, based on the fact pattern in that case, that, again, that we had a impaired or, in that case, unconscious inmate. who was put in a, in a holding cell, and then nobody checked on him, there was no medical personnel, similar to the situation here, where they basically just kind of, although knowing something's clearly very wrong, at least circumstantially, they just kind of leave him lying there, and we have a bad medical outcome as, as a result. Then the other two cases that I cited to, which were... As Judge Moritz suggested in her questions, has that been judicially determined for the purposes of this case, that it's the law of the case, that they were deliberately different, that Dale and Willis were deliberately different at that point? Yes. Yeah. Well, it... What's the basis of your answer? Well, it's... What ruling or what... Well, in the prior, the prior appeal, it was determined that there were sufficient facts that a reasonable jury could find that they were deliberately indifferent, based on his, based on those things that I just mentioned. Essentially, that he was, he was placed in that, that, that cell, that he was, appeared to be impaired, he was groaning and moaning in, in pain, and the, the testimony of his cellmate, that he, he was clearly in pain and needed medical attention. Right. So that, that, that has been decided. The other cases that we cite to are, which I think were, at least, there was an inference about these cases in the, the argument before, is, were CELOC. We determined that there was enough evidence to submit it for, to the fact finders to whether there was deliberate indifference. How does that, all of a sudden, become a judicial determination that there has been, that there is deliberate indifference? Well... This is just checking, because this is here for us, before us on summary judgment. That's right. That's right. So I, I restate my question. How does a determination that there's enough facts to submit it to the jury on that point somehow become converted into a judicial determination that there has been deliberate indifference? I think you can take a, of course, most of these civil rights cases are, the appeals are on summary judgment. I think you can take a statement where the first prong is established of, of the qualified immunity test, even at summary judgment. That that puts the, that puts an officer on notice that if I do this, then there's unlikely going to be, someone's going to find that this is unconstitutional. This is, this is an unconstitutional act or omission. What is clearly established is that deliberate indifference to a serious medical issue is, satisfies the first prong. But the second prong is the degree to which that issue, not whether they were deliberately indifferent, but whether we had here a serious condition, so serious that the prior cases give them notice that they should have done something else. Because deliberate indifference alone does not make a fairly established case. That's, that's right. And I, that's absolutely true. And, and with respect to Dale and Willis, the, the cases that we cite, Garcia, Seelock and Mata, which I think were, there was at least an inference to those cases. And those are the cases involving complaints of chest pain that were ignored by medical staff. And here you have, you know, severe enough pain that he's groaning and moaning and, and that his cellmate, a layperson, thought he needed immediate medical attention. So I think that those, those cases, again, though they involve chest pain versus abdominal pain, that those are sufficient to put Dale in. Well, let me drive it to the ridiculous. But what if he's moaning and groaning about a broken toe, which is very, very painful? At least mine would be. Is that enough to satisfy the clearly established? Everything else the same, except what he's gloating about is a broken toe. I think it is. I think, I do think so. I think it, I think that's somebody who would, who would need immediate medical attention. I mean, potentially if you don't get, you don't get attention for a broken toe, especially depending on the, the severity of it, it could, it could cause serious problems. So I think, I think that that would be a situation that would be obvious. You can't ignore that. Isn't that why, though, I think, isn't that why the C-lock case in particular is distinct? Because you had some clarity there because the, the, the individual actually was saying, I need medical help. Right. Having, I think that was the chest pains case. And in the other case that I cited, it was, it was the same thing, Mata, I believe, where the individual was saying, I've had neck surgery. Please don't do this. You're going to injure me. Don't, don't handcuff me in back. And maybe that is the distinction, as the appellant suggests, that we don't have present in the case law, which is, it's clear when an individual is telling you, not just moaning and groaning or saying, my stomach hurts, but here's what's going on and you, please help me. And I guess all I would do. And maybe that's what makes it clearly established. My only response to that would be, again, is that it was, he was telling them circumstantially through his, the way he was acting, his affect, his moaning and groaning, such that it was obvious to a lay person. And I have about 20 seconds left. Any other questions? No. Thank you. Thank you. All right. Thank you very much for yielding the rest of your time. Thank you, gentlemen, for a well-argued case. Case is submitted. Counsel are excused.